IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE DOE, | ) | CASE NO: |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT, REQUEST FOR |
| | ) | JURY TRIAL |
| OMAHA PUBLIC SCHOOL DISTRICT, | ) | |
| SUSAN COLVIN, | ) | |
| WESLEY G. DACUS, | ) | |
| | ) | |
|       Defendants. | ) | |

COMES NOW the Plaintiff Jane Doe, by and through her attorney, and brings this suit under the pseudonym Jane Doe to prevent further embarrassment and humiliation because of the conduct of the Defendant Omaha Public School District, and its employees, representatives, and agents, and Defendants Susan Colvin and Wesley Dacus, as more fully set forth below.  For her Complaint against the Defendants, Plaintiff states as follows:

1.      Jane Doe is a female resident of South Dakota.

2.      Because of the nature of the allegations, including the fact that the Plaintiff was the victim of a sexual assault and sexual harassment while a minor, Plaintiff requests permission to proceed in this matter as Jane Doe.

3.      The Defendant Omaha Public School District (hereinafter sometimes referred to as "OPS") is the school district which maintained, owned and operated Nathan Hale Middle School, in Omaha, Nebraska.

4.      At times relevant herein, Susan Colvin was the Principal at Nathan Hale Middle School, including from August 2009 through December 2009.

5.      At time relevant herein, Wesley G. Dacus was the Dean of Students at Nathan Hale Middle School, including from August 2009 through December 2009.

6.    OPS receives federal funding and at all times relevant herein was the recipient of federal funding and financial assistance utilized for educational programs and/or activities.

7.    OPS is a political subdivision and its staff act with color of state authority under statutes, regulation, custom and/or usage of the state of Nebraska.

8.    OPS is responsible and liable for the actions of its teachers, principals, staff, administrators, and any individual employed by OPS while the employee was acting within the scope of OPS's business.

9.    OPS is responsible for its own negligence as a joint participant in the acts of its employees because OPS's employees were acting under the direction and/or control of OPS.

10.   OPS is responsible for the actions, inactions, negligence and malfeasance of the members of its school board in adopting and implementing policies, including policies required to conform to applicable state and federal law.

11.   At all times relevant herein, Plaintiff had a right to pursue public education free from sexual harassment and discrimination on account of her female gender and race, which includes African-American heritage.

12.   While enrolled in public schools operated and maintained by OPS, Plaintiff was entitled to equal educational opportunities without regard to her sex or race.

13.   Plaintiff's claims include but are not necessarily limited to claims made pursuant to 42 U.S.C. §1983 et. seq. and Title IX found at 20 U.S.C. 1681 et. seq.

14.   Plaintiff's claims also include, but are not necessarily limited to, claims made pursuant to the Nebraska Political Subdivisions Tort Claims Act.  Neb. Rev. Stat. §13-901 et. seq.

15.   Plaintiff requests a jury trial in Omaha, Douglas County, Nebraska on all issues so

triable.

## COUNT I:     NEBRASKA POLITICAL SUBDIVISION TORT CLAIM (AGAINST DEFENDANT OPS)

16.     The foregoing recitals are incorporated herein by reference and fully restated.

17.     A claim against Defendant is being made pursuant to the Nebraska Political Subdivision Tort Claims Act.  Plaintiff has fulfilled every condition precedent to the filing of this Lawsuit under the Act.

18.     A tort claim notice was filed with Omaha Public Schools on behalf of the Plaintiff on or about March 25, 2016.

19.     More than six (6) months have passed since the submission of the notice of tort claim by Plaintiff and Omaha Public Schools has failed and refused to take action on such claim. Accordingly, Plaintiff elects to withdraw the tort claim and exercise her right, under Nebraska statute, to institute suit against Defendant Omaha Pubic School District.

20.     Plaintiff has given notice to OPS of the withdrawal of her claim in order to pursue recovery through civil suit.

21.     Plaintiff was a student enrolled in the Omaha Public School system including during the time period of August 2009 to June 2010.

22.     While enrolled in the Omaha Public School system, Plaintiff attended Nathan Hale Middle School in Omaha, Douglas County, Nebraska, including from the time period of August 2009 through on or about November 30, 2009.

23.     At times relevant herein, Defendant Omaha Public School District employed Shad Knutson as a teacher at Nathan Hale Middle School.

24.   At times relevant herein, Defendant Omaha Public School District employed Shad Knutson as a coach who coached teams comprised, at least in part, of students attending Nathan Hale Middle School.

25.   Mr. Knutson's duties with OPS included, but were not limited to, teaching and supervising Plaintiff Jane Doe in her classroom attendance.

26.   Knutson also had contact with Plaintiff through his role as a coach of teams associated with Nathan Hale Middle School.

27.   During the course and scope of his employment duties, Mr. Knutson engaged in inappropriate behavior with Plaintiff, including misconduct occurring in 2009 while Plaintiff was enrolled as a student at Nathan Hale Middle School.

28.   Over a course of time Mr. Knutson engaged in a process known as grooming, wherein he sought to give attention to Plaintiff to secure her trust and friendship and, thereafter, abused that seeming trust and friendship with Plaintiff by inducing her to engage in various activities, which included exposing herself to Mr. Knutson, and being subjected to Mr. Knutson touching her inappropriately, and other inappropriate behavior.

29.   Plaintiff Jane Doe was of such an age that she could not lawfully consent to the inappropriate contact, enticement and touching by Mr. Knutson.

30.   Knutson's inappropriate touching and enticement of the Plaintiff occurred on school property owned and operated by OPS, and, at least in part, during regular school hours.

31.   Plaintiff and her parents reported Mr. Knutson and his inappropriate touching to administrators of OPS including the Principal at Nathan Hale Middle School, Ms. Susan Colvin.

32.   Plaintiff and her parents met with Principal Colvin on November 30, 2009, at which time

Plaintiff was asked by Principal Colvin to write down the subject matter of her complaint about Mr. Knutson's conduct.

33.   Principal Colvin was not trained in investigative techniques, nor trained in assessing allegations of child sexual assault and abuse.

34.   Principal Colvin did not seek out the assistance or guidance of anyone trained in investigative techniques, including investigation of allegations of child assault and abuse.

35.   Principal Colvin directed another school administrator, Mr. Dacus, to interview two friends of Plaintiff.

36.   Mr. Dacus was not trained in investigative techniques, including investigation of allegations of child assault and abuse or the interviewing of witnesses.

37.   Both of the acquaintances corroborated Plaintiff's statement that she had made prior complaint regarding Mr. Knutson.

38.   Principal Colvin contacted OPS Administrators, including Mr. Edward Virant.

39.   Despite knowledge of Plaintiff's claim against Mr. Knutson, Principal Colvin did not contact law enforcement, child protective services, or anyone associated with the Nebraska Department of Health and Human Services.

40.   Despite knowledge of Plaintiff's claim against Mr. Knutson, Mr. Virant did not contact law enforcement, child protective services, or anyone associated with the Nebraska Department of Health and Human Services.

41.   Despite knowledge of Plaintiff's claim against Mr. Knutson, Mr. Dacus did not contact law enforcement, child protective services, or anyone associated with the Nebraska Department of Health and Human Services.

42.   Despite knowledge of Plaintiff's claim against Mr. Knutson, no one associated with OPS

contacted law enforcement, child protective services, or anyone associated with the Nebraska Department of Health and Human Services.

43. Despite legal obligation, OPS failed to establish a policy requiring notification to law enforcement, child protective services or the Nebraska Department of Health and Human Services when an allegation of sexual assault by a teacher was made by a student.

44. Neither Principal Colvin, Mr. Dacus nor Mr. Virant interviewed or interrogated Mr. Knutson.

45. Neither Principal Colvin, Mr. Dacus nor Mr. Virant even bothered to inform Mr. Knutson of the allegations made by Plaintiff, let alone examine him to determine whether any corroboration of Plaintiff's claim could be obtained through his own admissions or statements.

46. Despite actual or constructive knowledge of Plaintiff's claim against Mr. Knutson, no one else associated with OPS bothered to inform Mr. Knutson of the allegations, let alone examine him to determine whether any corroboration of Plaintiff's claim could be obtained through his own admissions or statements.

47. Rather than conduct any competent or credible investigation, let alone, refer the matter to legal authorities as required by state law, Principal Colvin, Mr. Dacus and/or one or more other employees of OPS decided to immediately suspend Plaintiff and force her to transfer to another school.

48. Principal Colvin and other administrators at Nathan Hale Middle School refused to believe the complaints of Plaintiff and her parents and rather than providing her counseling, or other assistance, and taking immediate action to suspend and/or terminate the employment of Mr. Knutson, OPS staff forced Plaintiff to transfer to another school.

49.  Because of the infliction of emotional distress and the trauma Plaintiff was subjected to by Knutson's misconduct, Omaha Public Schools had a duty to provide counseling and other services to Plaintiff, which Omaha Public Schools failed, neglected and refused to do.

50.  Because she was forced to re-locate schools, Plaintiff was re-victimized by the conduct of OPS employees and administrators, and suffered even greater distress by being forced to lose friends, adopt new friends and being placed in unfamiliar setting while in a state of emotional upheaval and distress due in part to OPS's failure to investigate and attempt to validate Plaintiff's claims to be true, as she knew them to be.

51.  In effect, not only was the Plaintiff sexually abused and discriminated against by an employee of OPS, but when Plaintiff came forward to tell the truth about its employee's misconduct, she was called a liar and shipped off to another school thereby further exacerbating her emotional distress and injuries.

52.  OPS is governed by the laws adopted by the Nebraska Unicameral, among other applicable laws, rules and regulations.

53.  As a recipient of federal funding, OPS is also bound by the policies concerning public education adopted by the United States Congress and the federal government.

54.  At the time of Plaintiff's report of Mr. Knutson' unlawful conduct, the Nebraska Unicameral had made it clear that pursuant to Neb .Rev. Stat. §28-710.01, and other applicable law, it was (and is) public policy within the State of Nebraska to promote responsible child care in all settings, including within public schools.

55.  At the time of Plaintiff's report of Mr. Knutson' unlawful conduct, pursuant to Neb. Rev. Stat. §28-711, if a school employee had reasonable cause to believe that a child had been

subjected to child abuse, he or she was under a mandatory obligation to report such

incident, or cause a report of child abuse to be made to proper law enforcement agency or

to the Department of Health and Human Services.

56.    At the time of the Plaintiff's report of Mr. Knutson's misconduct, OPS either knew or

should have known that it was (and is) the public policy in the state of Nebraska to

require the reporting of child abuse in school settings.

57.    At the time of the Plaintiff's report of Mr. Knutson's misconduct, OPS either knew or

should have known that the failure to make a report of child abuse constituted a violation

of Nebraska law.

58.    At the time of Plaintiff's report of Mr. Knutson' unlawful conduct, pursuant to 20 U.S.C.

§1701, Plaintiff was entitled to equal educational opportunity without regard to her sex

and race.

59.    The Nebraska Unicameral has recognized that students in Nebraska, inclusive of Plaintiff

at the time of her report of Mr. Knutson's unlawful conduct, had a constitutional right to

due process and fundamental fairness in the context of her education, including but not

limited to via the Unicameral's declarations in Nebraska Revised Statute §79-255.

60.    The Nebraska Unicameral has further recognized that students such as the Plaintiff have a

constitutional right to a public education, including but not limited to via its declarations

in Nebraska Revised Statute §79-255.

61.    At the time of Plaintiff's report of Mr. Knutson' unlawful conduct, Plaintiff had a right to

due process of law, as well as equal protection of the laws, including those protections

granted by Article I, Section 3 of the Nebraska Constitution.

62.    Notwithstanding that it either knew or should have known that it was mandatory under

the law to report Plaintiff's claim that she was subjected to child abuse by Mr. Knutson, OPS failed and refused to make such a report to law enforcement or the Department of Health and Human Services.

63. Notwithstanding that it either knew or should have known that the Plaintiff was entitled to an equal educational opportunity, including the right to remain in the school of her original choice, OPS violated such right by forcing the Plaintiff to move to a new school after her report of Mr. Knutson's sexual harassment, abuse and discrimination on account of her female sex and race.

64. OPS's transfer of the Plaintiff amounted to a mandatory reassignment within the meaning of Nebraska Revised Statute §79-256 in that it was an involuntary transfer of the Plaintiff to another school.

65. Under Nebraska law, mandatory reassignment means the involuntary transfer of a student to another school in connection with any disciplinary action

66. The actions of OPS were in callous disregard of the health, safety and welfare of Plaintiff and caused her emotional distress and other related symptoms to be exacerbated.

67. The actions of OPS were contrary to law and the rights afforded to the Plaintiff under state and federal law.

68. Plaintiff subsequently learned that Knutson had victimized one or more students in a substantially similar manner prior to her abuse and report of abuse by Knutson.

69. Plaintiff subsequently learned that Knutson had victimized one or more students in a substantially similar manner after her abuse by Knutson and report of abuse to OPS staff.

70. Among other complaints regarding Knutson were the following:

a.    Female student with the initials E.M. alleged Knutson engaged in inappropriate touching;

b.    A student with the initials E.T. alleged that Knutson engaged in inappropriate conduct;

c.    A student with the initials M.K. alleged that Knutson engaged in inappropriate activity, including the exchange of inappropriate and sexually suggestive Messages and requests for photographs of her breasts;

d.    A former student at Nathan Hale, who also worked at Nathan Hale while a minor, with the initials E.A. alleged that Knutson engaged in inappropriate contact, including the exchange of thousands of calls and text messages, the touching of breasts and other parts of the body, and engaged in kissing; and

e.    A student with the initials M.P. alleged that Knutson engaged in sexually inappropriate activity with her.

71.    Within three (3) weeks of Plaintiff informing OPS of Knutson's improper conduct, another student in Knutson's class came forward with similar allegations, including inappropriate communication by Knutson and a request to see that student's breasts.

72.    Despite knowledge of a similar claim of misconduct by another student of Knutson's, neither OPS, Colvin, nor Dacus re-opened the investigation of the Plaintiff's claim, or even informed the Plaintiff or her parents, so that they could demand a re-opening of the investigation of Knutson relative to Plaintiff's claim.

73.    Knutson was eventually convicted of the felony charges of child abuse and child enticement for an illegal sexual purpose through the use of an electronic communication device.

74.  Knutson is a registered sex offender within the state of Nebraska in connection with his unlawful conduct with a minor.

75.  Knutson's conduct relative to Plaintiff constituted child abuse within the meaning of Nebraska law.

76.  OPS and its staff had reason to suspect Knutson of inappropriate behavior relative to students prior to Plaintiff's abuse by Knutson and report of abuse to OPS staff.

77.  OPS inflicted further distress upon Plaintiff by failing to report the conduct of Mr. Knutson to law enforcement authorities, although Omaha Public School had a legal obligation to make such report.

78.  The failure to make such report caused Plaintiff to suffer further emotional distress and trauma and subjected her to a sense that no one believed her complaints.

79.  OPS's failure to conduct an investigation and notify law enforcement also caused a spoliation of evidence which Plaintiff could have utilized to validate the claims made by her and other students against Knutson.

80.  Defendant OPS is responsible for the conduct of its agent, Mr. Knutson, which occurred during the course, scope and discharge of his employment related duties.

81.  OPS is further liable for emotional distress, trauma and other damages suffered by Plaintiff by virtue of its negligent retention of Mr. Knutson.

82.  OPS is further liable for the continuing infliction of emotional distress and trauma that Plaintiff was subjected to by virtue of its negligent and reckless response to the complaints of Plaintiff including, but not limited to, its actions in failing to provide appropriate counseling to Plaintiff, forcing Plaintiff to relocate schools, which caused her further inconvenience, embarrassment and harassment, and its failure to make report of

the misconduct to appropriate law enforcement agencies in an attempt to cover up and conceal the misconduct of its teacher,

83.   All of the actions of the Defendant and its agents and employees had the effect of exacerbating Plaintiff's damages and caused her to suffer further emotional distress, trauma, pain, suffering, embarrassment and humiliation.

84.   As a direct and proximate result of the negligence, errors, omissions and malfeasances of Omaha Public Schools, and its agents and employees, Plaintiff suffered damages.

85.   Plaintiff was a minor at the time of the misconduct and continued to be a minor until March 27, 2015, through which time the applicable statute of limitations on her claims was tolled.

86.   At all times alleged herein, the Defendant's employees were acting in the scope and course of their employment and, as such, any negligence is imputed to the Defendant.

87.   Defendant Omaha Public School District is responsible for the actions of its employees through the doctrine of respondeat superior.

88.   Shad Knutson, an employee of OPS, acting in the course and scope of his employment, subjected the Plaintiff to unwanted sexual contact amounting to assault and abuse of a child.

89.   Shad Knutson, an employee of OPS, acting in the course and scope of his employment, subjected the Plaintiff to unwanted attention and communication which amounted to sexual harassment and discrimination.

90.   Shad Knutson, an employee of OPS, acting in the course and scope of his employment,

failed to exercise ordinary and reasonable care in performing nondiscretionary duties, and was therefore negligent in performing duties owed to the Plaintiff in one or more the following ways:

a.      In failing to provide a secure environment for Plaintiff; and/or

b.      In failing to provide a safe environment for Plaintiff; and/or

c.      Failing to provide adequate supervision of the Plaintiff.

d.      Failing to identify and report the assault of the Plaintiff.

e.      Failing to immediately report to appropriate school personnel his misbehavior.

f.      Failing to appreciate the seriousness of the acts that occurred and the psychological effect on the Plaintiff.

g.      Failing to timely report the assault to local police department so that they could conduct a professional investigation and gather any evidence as they would deem necessary and proper.

h.      Failing to immediately refer Plaintiff to a psychologist, therapist or counselor.

91.   Principal Colvin and staff at Nathan Hale Middle School, including Defendant Dacus, acting in the course and scope of their employment, failed to exercise ordinary and reasonable care in performing their nondiscretionary duties, and were therefore negligent in performing duties owed to the Plaintiff in one or more of the following ways:

a.      In failing to provide a secure environment for Plaintiff; and/or

b.      In failing to provide a safe environment for Plaintiff; and/or

c.      Failing to provide adequate supervision of the Plaintiff.

d.      Failing to identify and report the assault of the Plaintiff.

e.    Failing to monitor Knutson.

f.    Failing to adopt safeguards and protections to prevent the abuse of students by

teachers and staff on school property.

g.    Failing to immediately report to appropriate school district personnel Knutson's

misbehavior.

h.    Failing to appreciate the seriousness of the acts that occurred and the

psychological effect on the Plaintiff.

i.    Failing to timely report the assault to local police department so that they could

conduct a professional investigation and gather any evidence as they would deem

necessary and proper.

j.    Failing to immediately refer Plaintiff to a school psychologist or school counselor.

k.    Failing to adopt or implement appropriate training relative to student contact and

the reporting of student contact by a teacher, and/or train personnel, including

Shad Knutson and his supervisors in appropriate policies.

l.    Failing to supervise employees to prevent potential risk of harm to a student

and/or by risk that a teacher will act in an inappropriate manner.

m.    Failing to have in place a system of security and/or supervision which would

prevent and/or deter such an assault such as Plaintiff was subjected to.

n.    Failing to warn Plaintiff and/or her parents as to potential risks presented by Shad

Knutson.

o.    In failing to protect student Plaintiff while she was inside Nathan Hale Middle

School.

p.    Failing to provide a safe educational environment for Plaintiff while at Nathan

Hale Middle School and forcing her to transfer schools after she made a report of Knutson's misconduct.

q.    Retaliating against the Plaintiff for her making an accusation against a Nathan Hale Middle School teacher, including her suspension and transfer.

r.    Failing to conduct an appropriate and competent investigation of the Plaintiff's claims.

92.    Defendant OPS was negligent in one or more of the following particulars:

a.    All above stated negligence, errors or omissions of its employees as set forth above, all of which are incorporated by reference.

b.    Negligently hiring and retaining Shad Knutson.

c.    Failing to properly train and supervise Colvin, Dacus and other employees, including as it relates to reporting duties and retaliation against students for making reports of teacher misconduct.

d.    Failing to adopt and/or enforce policies to prevent retaliation and to safeguard student's educational opportunities, including the opportunity to challenge claims leading to suspension or involuntary transfer from school.

e.    Failing to make counseling or therapy available to students victimized by teacher misconduct, including the Plaintiff.

93.    The School Board and Superintendent are responsible for establishing school district policy for student behavior and discipline and are charged with implementation and training of applicable school district policy and procedures to personnel at each and every school within the district.  The School Board's and its Superintendent's negligent acts

proximately and directly caused damages to Plaintiff.  These negligent acts include, but are not limited to, the following:

a.      All of the above stated negligence, errors and/or omissions as set forth above, all of which are incorporated by reference.

b.      Failing to have appropriate and consistent policies throughout the school district enabling individual school personnel such as principals, staff and teachers to appropriately, adequately and timely respond to events of sexual assault and harassment.

c.      Failing to maintain and uphold appropriate criteria and factors within the district For review and reporting of claims of sexual assault and/or harassment by teachers and thereby failing to adequately train its principals, teachers and staff on the avenues and means available to them in instances of reports of sexual assault and/or harassment directed to one or more students by a teacher.

d.      Failing to have, implement, promulgate and follow effective guidelines for addressing behaviors which do not support a positive learning environment.

e.      Failing to adequately train OPS schools, school employees, and school administrators, to monitor and make appropriate reports of allegations of inappropriate behavior of teachers relative to students.

f.      Failing to ensure and provide a safe environment for the students of Nathan Hale Middle School.

g.      Failing to adopt policies requiring the reporting of abuse consistent with state and federal law.

h.      Failing to adopt policies providing for the protection of students victimized by

teachers or other staff, including making counseling and treatment available.

i.     Failing to adopt policies to prevent retaliation against students such as Plaintiff when making complaints about teacher or staff misconduct, such as that engaged in by Knutson.

j.     Failing to prevent employees from undertaking investigations they are neither trained for nor competent to perform.

94.     As a direct and proximate result of the conduct, actions, inactions, errors and omissions described above, Plaintiff suffered harm, injury and damage in a total amount to be determined at trial.

95.     Plaintiff's damages and injuries include but are not necessarily limited to that associated with past, present and future emotional distress, humiliation, pain, disability, inconvenience, mental anguish, embarrassment and discomfort related to the assault and unwanted touching by Knutson.

## COUNT II:  VIOLATION OF NEBRASKA STUDENT DISCIPLINE ACT (AGAINST ALL DEFENDANTS).

96.     The foregoing recitals are incorporated herein by reference and fully restated.

97.     After her allegation, OPS, through Principal Colvin, informed Plaintiff's father telephonically that she would not be allowed to return to Nathan Hale Middle School.

98.     Principal Colvin also informed Plaintiff's father that she would be immediately suspended from school because OPS had made a determination, without any substantive basis or training, let alone an interview of Shad Knutson, that the allegation was false.

99.    Plaintiff's father objected to the determination by OPS and asked if Plaintiff could at least complete the semester at Nathan Hale Middle School.

100.   Principal Colvin informed Plaintiff's Father that Plaintiff could not return to Nathan Hale and caused her belongings to be boxed up and picked up by a family member.

101.   Plaintiff was forced to transfer to a school known as Marrs Middle School.  Whereas, Plaintiff's residence had been a ten minute ride to or from Nathan Hale Middle School in north Omaha, Marrs Middle School was literally on the other side of town from Plaintiff's residence and located in south Omaha, requiring Plaintiff to take an hour long or greater duration bus ride to and from school each day.

102.   The actions taken by OPS, Principal Colvin and Mr. Dacus amounted to a mandatory reassignment of the Plaintiff within the meaning of Nebraska Revised Statute §79-256 in that it was an involuntary transfer of the Plaintiff to another school.

103.   The actions taken by OPS, Principal Colvin and Mr. Dacus also amounted to a suspension of the Plaintiff.

104.   The suspension of the Plaintiff was contrary to law, including the Nebraska and United States Constitutions, as well as Nebraska Revised Statute  §79-265 because no competent investigation was undertaken, and Plaintiff was not given any oral or written notice of the charges against her, the explanation of any evidence OPS had, and an opportunity to present her version of events in response to any explanation of the evidence OPS had obtained.

105.   In fact, OPS had not obtained any evidence, other than corroboration of the Plaintiff's claim from two of her classmates that confirmed that Plaintiff had made prior consistent statements of inappropriate conduct by Mr. Knutson.

106.   OPS further acted contrary to law, including the Nebraska and United States

Constitutions, as well as Nebraska Revised Statute §79-268, because it failed to provide

to Plaintiff or her parents any written notice of the mandatory reassignment and transfer

to another school, with any notice of any rule or standard of conduct allegedly violated by

the Plaintiff, the penalty Principal Colvin recommended, a statement advising that

Plaintiff had the right to a hearing, a description of the hearing procedure, a statement

that Plaintiff or her parents had a right to examine any of the Plaintiff's academic and

disciplinary records and any affidavits to be used at the hearing concerning the alleged

misconduct and to know the identity of the witnesses to appear at the hearing and the

substance of their testimony.

107.   Because OPS failed to provide proper and requisite notice, the Plaintiff was deprived of

her opportunity to confront the allegations and point out OPS's reckless and illegal

conduct in failing to even interview Shad Knutson about the allegations, let alone make a

report to proper law enforcement officials as required by state law.

108.   The suspension and mandatory transfer were further upsetting to Plaintiff and caused her

to suffered embarrassment, humiliation, anxiety and depression.

109.   As a direct and proximate result of the Defendants' violation of the Nebraska Student

Discipline Act, Plaintiff suffered general and special damages.


### COUNT III:   TITLE IX CLAIM (AGAINST ALL DEFENDANTS)

110.   The foregoing recitals are incorporated herein by reference and fully restated.

111.   Defendants' conduct, action, and inaction amounted to a violation of the rights

guaranteed to the Plaintiff under Title IX found at 20 U.S.C. 1681 et. seq.

112. Defendants acted with deliberate indifference to the claims made by the Plaintiff, including her report of the abuse and assault inflicted by OPS employee Knutson.

113. Rather than take appropriate action, such as making a report to appropriate legal authorities and provide the Plaintiff with counseling and treatment, Defendant retaliated against the Plaintiff and forced her to relocate schools.

114. Defendant OPS's conduct amounted to a violation of Title IX.

115. Defendants Colvin and Dacus each also violated Title IX by acting with deliberate indifference concerning Plaintiff's claim and depriving her of educational opportunities without due process of law.

116. As a direct and proximate result of Defendants' conduct, the Plaintiff suffered damage and injury in a total amount to be determined at trial.

117. Defendants' misconduct is of sufficient reckless nature and degree so as to justify the imposition of punitive and/or exemplary damages, including but not limited for the reason that not only did the Defendants' exacerbate the Plaintiff's damages and effectively revictimized her, but Defendants also allowed a sexual predator to continue to prey upon young girls within their care and under their supervision.

118. Had Defendants conducted themselves in accordance with the applicable law, Plaintiff's damages would have been lessened and one or more young woman would not have been victimized by Knutson.

119. Plaintiff will incur attorney fees and costs in pursuing recovery of her claims arising under Title IX.

## COUNT IV: SECTION 1983 CLAIM FOR CIVIL RIGHTS VIOLATION (AGAINST ALL DEFENDANTS)

120.     The foregoing recitals are incorporated herein by reference and fully restated.

121.     Defendant OPS's conduct, action, and inaction amounted to a violation of the rights guaranteed to the Plaintiff to be free from discrimination and harassment on account of her sex.

122.     Defendant and its agents and employees discriminated against the Plaintiff on the basis of her female gender.

123.     Defendant Colvin discriminated against the Plaintiff on the basis of her gender and race.

124.     The harassment and discrimination the Plaintiff was subjected to by Defendants amounted to a violation of Plaintiff's civil rights in contravention of 42 U.S.C. §1983.

125.     As a direct and proximate result of Defendants' conduct, the Plaintiff suffered damage and injury in a total amount to be determined at trial.

126.     Plaintiff will incur attorney fees and costs in pursuing recovery of her claims arising under 42 U.S.C. §1983.


**COUNT V:    CLAIM UNDER NEBRASKA REVISED STATUTE §20-148 FOR DAMAGES ARISING FROM A VIOLATION OF RIGHTS SECURED BY UNITED STATES CONSTITUTION AND THE CONSTITUTION AND LAWS OF NEBRASKA (AGAINST COLVIN AND DACUS)**

127.     The foregoing recitals are incorporated herein by reference and fully restated.

128.     The foregoing recitals are incorporated herein by reference and fully restated.

129.     Defendants Colvin and Dacus subjected the Plaintiff, while she was a citizen of

Nebraska, of a deprivation and violation of her rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska.

130.   As a consequence of the deprivation and violation of her rights, Plaintiff suffered proximate harm and damages.

131.   Nebraska Revised Statute §20-148 subjects Defendant Colvin and Dacus to liability to Plaintiff.

## COUNT VI: DEFAMATION (AGAINST ALL DEFENDANTS)

132.   The foregoing recitals are incorporated herein by reference and fully restated.

133.   Defendant's published false statements concerning the Plaintiff which served to harm her reputation, lower her in the estimation of her community and deterred third persons from associating or dealing with her.

134.   Among other false statements was the assertion by Dacus that Plaintiff has made a false allegation against Knutson.

135.   Among other false statements was the assertion by Principal Colvin to Plaintiff's father that Plaintiff was lying and had made a false allegation against Knutson.

136.   One or more employees or agents of OPS, including upon information and belief either Dacus or Colvin, made false statements to one or more people associated with Marrs Middle School where Plaintiff was forced to transfer to.  While at Marrs, Plaintiff was confronted by another student who accused her of having made up accusations against a teacher.  Upon information and belief, this student was related in some manner to the then Principal at Marrs.  Plaintiff made no such statements to anyone else who would have relayed the information to anyone at Marrs, and, accordingly, the only source of the false characterization would have been someone associated with OPS.

137.   The false statements by OPS further caused the Plaintiff to suffer embarrassment, humiliation and depression.

138.   The statements made by OPS employees were defamatory per se.

139.   As a direct and proximate result of the defamatory statements and publications by OPS employees, Plaintiff suffered damages.

## COUNT VII: FALSE LIGHT (AGAINST COLVIN AND OPS)

140.   The foregoing recitals are incorporated herein by reference and fully restated.

141.   The suspension and mandatory transfer, as well as the statements that Colvin or other OPS employees made to other OPS employees at Marrs, which were then disseminated to one or more students at Marrs, placed the Plaintiff in a false light.

142.   By virtue of their conduct, Colvin and one or more OPS employees gave publicity to the Plaintiff's allegations against Knutson.

143.   The false light the Plaintiff was placed in would be highly offensive to a reasonable Person.

144.   Colvin and other OPS employees either knew or should have known that they were acting with reckless disregard to the falsity of the publicized matter, namely the claim that Plaintiff had made up allegations against Knutson, and the false light she would be placed in by dissemination of such claims.

145.   As a direct and proximate result of the false light she was placed in, Defendant suffered proximate harm and damage.

WHEREFORE, Plaintiff prays for judgment against the Defendants for all of her general and special damages in an amount to be determined at trial, together with prejudgment and post-judgment interest to the extent allowed by law, attorney fees to the extent allowed by law, costs, punitive and/or exemplary damage to the extent authorized by law, and any such other further relief as may be necessary, just or equitable under the premises.

JANE DOE, Plaintiff,

s/ Richard P. McGowan

By: _____

Richard P. McGowan, NE # 22453
McGowan Law Firm, PC, LLO
11235 Davenport Street #100
Omaha, Nebraska 68154
Phone: 402-341-0820
Fax:    800-518-9772
rpm@lawfirmomaha.com
ATTORNEY FOR PLAINTIFF